UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                                      No. 15-291

MICAH WILLIAMS                                                     SECTION I

**ORDER & REASONS**

Before the Court is *pro se* defendant Micah Williams' ("Williams") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] For the following reasons, the motion is denied.

**I.**

On April 14, 2016, Williams pled guilty[3] to two counts of an indictment,[4] which charged him with possessing with the intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and knowingly possessing a firearm in furtherance of a drug trafficking crime violation of 18 U.S.C. § 924(c)(1)(A).[5] This Court sentenced Williams to a term of imprisonment of one hundred thirty-five months as to count 1, and a term of sixty months as to count 5, to be served consecutively to the sentence imposed in count 1.[6] The Court also sentenced Williams

---

[1] R. Doc. No. 64. Williams filed a motion for appointment of counsel, R. Doc. No. 74, which the Court denied. R. Doc. No. 75.
[2] R. Doc. No. 70.
[3] R. Doc. No. 22.
[4] R. Doc. No. 1.
[5] R. Doc. No. 22, at 1.
[6] R. Doc. No. 38, at 2.

1

to a term of supervised release of ten years as to count 1, and five years as to count 5, to run concurrently.[7] Williams' projected release date is April 17, 2029.[8]

Williams filed a notice of appeal of the final judgment and sentence to the United States Fifth Circuit Court of Appeals on September 21, 2016;[9] the Fifth Circuit dismissed the appeal on April 12, 2017, pursuant to an unopposed motion filed by Williams.[10]

Williams now requests compassionate release pursuant to the First Step Act.[11] Williams argues that the COVID-19 pandemic itself, as well as his medical conditions, constitute extraordinary and compelling reasons warranting a sentence reduction.[12] Specifically, Williams alleges that he suffers from asthma and epilepsy, as well as obesity and "heart disease," and consequently falls within a group recognized as "high-risk" by the Centers for Disease Control and Prevention (CDC) if he contracts COVID-19.[13] Williams further claims that he is at a greater risk of COVID-19 infection and death because of the "dire circumstances" facing him at FCI Yazoo City Low ("Yazoo City Low"), where he is incarcerated.[14]

---

[7] R. Doc. No. 38, at 3.
[8] R. Doc. No. 70, at 1.
[9] R. Doc. No. 43.
[10] R. Doc. No. 63, at 1; *see* Unopposed Motion to Dismiss Appeal at 1, *United States v. Micah Williams*, No. 16-30960 (5th Cir. Apr. 11, 2017).
[11] R. Doc. No. 64.
[12] *Id.* at 2.
[13] *Id.* & R. Doc. No. 68, at 2.
[14] R. Doc. No. 68, at 1. As of September 3, 2020, zero inmates and four staff members are currently positive for COVID-19 at Yazoo City Low. Ninety-four inmates and nine staff members have recovered. Three inmates at the facility have died from the virus. Five inmates have pending COVID-19 tests, and two hundred thirty-eight

Williams submitted a letter to the Court as an addendum to his motion.[15] According to Williams, there have been "[e]rrors at the administrative level from the outset of the pandemic" at Yazoo City Low.[16] Specifically, he alleges that staff members are not tested daily; the facility population is above "the maximum capacity of 1,200 inmates required before mandatory decreases to prevent the spread of COVID-19[]"; and "the standards [employed at Yazoo City Low]. . . fall far short of the CDC and State Health Department standards and criteria for social distancing, testing, and treatment of medical issues[.]"[17]

Williams states that on April 20, 2020 he submitted a written request to the Yazoo City Low warden, "asking him to petition the Court, on [Williams'] behalf, for a reduction in sentence or compassionate release, in accordance with 3582(c)(1)(A) . . ." and that, as of the date of his motion to the Court, "even after an Electronic Email follow-up, [the warden] has not issued a response" to his request.[18] In light of these alleged circumstances, Williams asks that the Court reduce his sentence.[19]

The government opposes Williams' motion and argues that it should be denied.[20] The government confirms that Williams sought compassionate release

---

have completed tests. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited September 3, 2020).
[15] R. Doc. No. 68, at 1.
[16] *Id*. at 1–2.
[17] *Id*. Williams does not indicate the source of the alleged maximum number of inmates the facility can imprison before "mandatory decreases[.]" *Id*.
[18] R. Doc. No. 64, at 2.
[19] *Id*. at 3.
[20] R. Doc. No. 70.

through BOP administrative processes.[21] Though the government states that BOP was unable to locate a request from Williams dated April 20, 2020, after Williams stated that he submitted a request, BOP located a record of an administrative request from Williams dated June 8, 2020.[22]

On the merits, the government does not dispute that Williams' obesity is a medical condition that "increases his risk of severe illness from COVID-19"[23] and "presents an extraordinary and compelling reason"[24] under the statute, but the government argues that "the § 3553(a) factors and U.S.S.G. § 1B1.13 weigh against his release."[25] The government describes BOP's general response to COVID-19 and outlines the various precautions being taken to safeguard inmates nationwide.[26]

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons

---

[21] *Id.* at 9.
[22] *Id.* at 7–8, & R. Doc. No. 70-3, at 1.
[23] R. Doc. No. 70, at 7 (stating that Williams' body mass index is between 40.0 and 44.9).
[24] *Id.* at 10.
[25] *Id.* The government also disputes whether Williams suffers from asthma, epilepsy, and heart disease. *See id.* at 7 ("Williams asserts in his motion and addendum that he suffers from asthma and epilepsy, but there no is documentary support for those conditions in Williams' submission or the BOP medical records. Williams asserts in his addendum to his motion that he also suffers from heart disease, but the closest match in his medical records is a diagnosis of high cholesterol.") (citations omitted).
[26] *Id.* at 2–6.

4

warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been

recognized by many courts. *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). Consequently. these district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case-by-case basis, and that the policy statement, while helpful, is not dispositive with regard to such claims. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."); *see also United States v. Haynes*, No. 93-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

Accordingly, the Court will consider whether Williams has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). As the government concedes, this requirement is satisfied.[27]

Williams submitted a request through BOP processes; the government was unable to locate a response to Williams' request from the FCI Yazoo City Low warden; and the instant motion was filed more than thirty days after Williams submitted that administrative request.[28] Accordingly, the Court has jurisdiction to consider Williams' motion. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Williams' sentence. *See Perdigao*, 2020 WL at *2; *Beck*, 425 F. Supp. 3d at 579. The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious

---

[27] R. Doc. No. 70, at 9–10.
[28] *Id.* at 10.

physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Williams suffers from obesity.[29] As the government concedes that, in Williams' case, this is an extraordinary and compelling reason, the Court will not evaluate the claim further, assuming without deciding that it is so.[30]

On the other hand, Williams' unsupported assertions that he suffers from asthma, an unspecified "heart disease" that the government interprets as a reference to high cholesterol, and epilepsy fail to establish that Williams suffers from a terminal illness or that his ability to provide self-care from within Yazoo City Low is substantially diminished. Courts have denied compassionate release motions based on a defendant's asthma and high cholesterol. *See United States of America v. Sarah Paxton*, No. 17-121, 2020 WL 4498832, at *2 (W.D. La. Aug. 4, 2020) (holding that the defendant failed to meet her burden of showing entitlement to a sentence reduction when she "claim[ed] to have a history of severe asthma with occasional flare-ups" but provided no evidence of this condition); *United States v. Pagan Zapata*, No. 18-235, 2020 WL 4464660, at *2 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's asthma did not constitute an extraordinary and compelling reason for release because,

---

[29] R. Doc. No. 70, at 7.
[30] The Court notes, however, that numerous courts have found obesity not to be an extraordinary and compelling reason justifying release. *See, e.g., United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

although he reported having asthma to the Court before his sentencing, he failed to provide recent medical records supporting his claim that the illness severely worsened while in BOP custody); *see also United States v. Celestine*, No. 18-83, 2020 WL 3791889, at *1, *3 (E.D. La. July 7, 2020) (Milazzo, J.) (denying a motion for compassionate release where the defendant was 59 years old and suffered from high cholesterol, hypertension, and sleep apnea because the defendant did "not identif[y] any medical condition that puts him at a greater risk for severe consequences from contracting COVID-19."); *United States v. Josey*, No. 17-565, 2020 WL 4192978, at *3 (S.D. Tex. July 20, 2020) (denying a motion for compassionate release where the defendant claimed to suffer from high cholesterol, among other medical conditions, because the defendant "has failed to offer evidence of any underlying medical condition that would make her particularly vulnerable to severe illness or death should she contract COVID-19"); *United States v. Curry*, No. 10-111, 2020 WL 4201646, at *2 (E.D. La. July 22, 2020) (Vance, J.) (concluding that "[e]ven assuming [the defendant] is afflicted with [severe asthma, hypertension, high cholesterol, and PTSD], none" of those conditions satisfied the Guidelines) (citing U.S.S.G. § 1B1.13, cmt n.1(A)).

Courts also have rejected compassionate release motions where the defendant's reported underlying medical concern was epilepsy, because there is no evidence that epilepsy increases the risk of COVID-19 infection or increases the

severity of infection if exposed.[31] *See United States v. Martin*, No. 12-10, 2020 WL 4210477, at *2 (S.D. Miss. July 22, 2020) (denying compassionate release and finding the defendant's epilepsy was not an extraordinary and compelling reason to reduce his sentence); *United States v. Hankton*, No. 12-1, 2020 WL 3581734, at *2 (E.D. La. July 1, 2020) (Feldman, J.) (same). Accordingly, even assuming Williams does suffer from the additional medical ailments he claims, they do not amount to extraordinary or compelling reasons.

Finally, Williams' more general concerns regarding COVID-19 do not warrant a reduction of his sentence. BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[32] Numerous courts have concluded that broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

---

[31] *See People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (visited September 2, 2020) (listing the underlying medical conditions that present an increased risk for severe illness from COVID-19 and not mentioning epilepsy).
[32] *See* R. Doc. No. 70, at 2–6.

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Williams has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate.[33] Moreover, the existence of COVID-19 at Yazoo City Low alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

### C. Safety to Others and the Community

Even assuming that Williams' obesity presents an extraordinary and compelling reason to grant compassionate release, he has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the

---

[33] As the government advised, R. Doc. No. 70, at 2–6, the BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 28, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

11

danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g). In doing so, the Court concludes that it cannot grant compassionate release.

Williams plead guilty in April 2016 to two counts of a five-count indictment.[34] The factual basis for Williams' guilty plea states that on the occasion that gave rise to his arrest, Williams led officers on a car chase, which ended when Williams' vehicle collided with two police cars.[35] During the chase, Williams tossed a backpack from his car, which was later found to contain, among other items: "six plastic bags of suspected heroin[,]" "1 plastic bag of suspected cocaine[,]" "1 large plastic bag containing suspected methamphetamine[,]" as well as a scale with suspected cocaine residue on it and "1 bottle of inositol powder suspected in the use of cutting of narcotics[.]"[36] Officers searched the car and uncovered a plastic bag containing suspected marijuana.[37] Based on Williams' jailhouse calls, officers obtained a search warrant and conducted another a search of the car.[38] This second search revealed a hidden compartment near the driver's seat containing: a Glock Model 21 handgun, "loaded with 1 live full metal jacket round[,]" "[a]n extended 26 round magazine, loaded with 24 full metal jacket rounds[,]" a black bag containing several bags of suspected crack cocaine and suspected crystal methamphetamine, and a "clear plastic sandwich baggie containing several bags of suspected crack cocaine, several bags of

---

[34] R. Doc. No. 22, at 1.
[35] R. Doc. No. 23, at 1.
[36] *Id.* at 2.
[37] *Id.*
[38] *Id.*

12

powder cocaine, suspected crystal methamphetamine and a prescription drug bottle labeled codeine."[39] Previously, Williams was convicted of a felony, possession of cocaine, in Terrebonne Parish, LA.[40] Therefore, the firearm in the instant offense was "illegally possessed."[41]

The nature and circumstances of the instant offense, involving a car chase and crash, narcotics, and a firearm, demonstrate that Williams would be a danger to the community if released.[42] *Cf. Perdigao*, 2020 WL at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

## IV.

After reviewing the § 3553(a) factors[43] and considering the applicable policy statement of the Sentencing Commission, the Court does not find that Williams warrants a reduction in his sentence.

Accordingly,

**IT IS ORDERED** that Micah Williams' motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, September 3, 2020.

                    **LANCE M. AFRICK**
                    **UNITED STATES DISTRICT JUDGE**

---

[39] *Id.* at 3.
[40] *Id.* at 3.
[41] *Id.*
[42] *Id.* at 1–4.
[43] The Court has specifically considered 18 U.S.C. § 3553(a)(1), (2)(A)–(C), and (5).